IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

```
                              :
KISBY LEES MECHANICAL LLC, t/a :     HON. JEROME B. SIMANDLE
KISBY SHORE CORP.              :
                              :     Civil No. 11-5093 (JBS/AMD)
          Plaintiff,          :
                              :
     v.                       :          OPINION
                              :
PINNACLE INSULATION, INC.,    :
                              :
          Defendant.          :
                              :
```

APPEARANCES:

Eric M. Wood, Esq.
FOX ROTHSCHILD LLP
Midtown Building
1301 Atlantic Avenue
Suite 400
Atlantic City, NJ 08401
     Attorney for Plaintiff / Counterclaim Defendant

Shana McMahon, Esq.
JACOBY DONNER, PC
1700 Market Street
Suite 3100
Philadelphia, PA 19103
     Attorney for Defendant / Counterclaimant

**SIMANDLE**, Chief Judge:

I.   **INTRODUCTION**

     This matter is before the Court on Plaintiff Kisby Lees

Mechanical LLC's ("Kisby" or "Plaintiff") motion to dismiss

Defendant's Counterclaim for failure to state a claim [Docket

Item 9], which the Court converted into a motion for summary

judgment pursuant to Fed. R. Civ. P. 12(d) in its July 31, 2012

Opinion and Order [Docket Items 18 & 19].  In its converted

motion for summary judgment, Plaintiff argues that
Defendant/Counterclaimant Pinnacle Insulation, Inc.'s ("Pinnacle"
or "Defendant") Counterclaim must be dismissed pursuant to the
doctrines of res judicata, the entire controversy doctrine, and
the doctrine of arbitration and award.  The principal issues for
the Court to determine are (1) whether a dispute of fact exists
whether Kisby's unconfirmed arbitration award was of limited
scope, and (2) if so, whether the fact that a factfinder could
conclude it was of limited scope limits the preclusive effect of
the unconfirmed arbitration award in this matter.  As explained
below, because the Court answers both questions in the
affirmative, the Court will deny Plaintiff's converted motion for
summary judgment.

## II.  BACKGROUND

Plaintiff Kisby is a Heating, Ventilating and Air
Conditioning ("HVAC") contractor, and Defendant Pinnacle is a
supplier of insulation materials. Kisby engaged Pinnacle, as a
subcontractor, to supply HVAC insulations on a number of projects
that Kisby performed pursuant to subcontracts with higher tier
contractors. Pinnacle now seeks payment from Kisby for the
subcontracted work. The factual background and procedural history
of this case were recounted in detail in Kisby Lees Mechanical
LLC v. Pinnacle Insulation, Inc., Civ. No. 11-5093, 2012 WL
3133681 (D.N.J. July 31, 2012), when Defendant's motion to

dismiss Plaintiff's counterclaims under Fed. R. Civ. P. 12(b)(6) was converted to the present motion for summary judgment under Rule 56. In light of this recent recitation, the Court will summarize the facts and procedural history here only briefly.

### A. Factual Background and Arbitration

Plaintiff Kisby is a contractor that hired Defendant Pinnacle as an insulation subcontractor to provide labor and materials on various construction projects. [Decl. of James J. Lees, Jr. ¶¶ 2-3; Pinnacle Insulation (May 24, 2011) (Keefe, Arb.) at 1.] The Atlanticare Regional Medical Center, City Campus ("Atlanticare project") was one of the projects for which Pinnacle provided subcontract services for Kisby. [Aff. of Shana McMahon ¶ 11; Aff. of Robert J. Miller ¶¶ 1-3.] It is undisputed that Pinnacle performed its work, and there have been no allegations that any of the work was faulty. [Pinnacle Insulation (May 24, 2011) (Keefe, Arb.) at 1-2.] Pinnacle alleges Kisby has not paid it the amounts due for its work. Pinnacle alleges that there is a factual dispute whether Kisby has been paid by the project owners for the work done by Pinnacle.

On May 19, 2010, Pinnacle filed a complaint against Kisby with this Court seeking damages relating to unpaid contracts on 13 projects throughout New Jersey, docketed at Civ. No. 10-2573. [Aff. of Shana McMahon ¶ 2.] However, after discussions between the parties, Pinnacle agreed to voluntarily dismiss the action

without prejudice to pursue the claims in arbitration. On June
18, 2010, Kisby's counsel, Jacob S. Perskie, wrote a letter to
Pinnacle's counsel, Shana McMahon, to "confirm our agreement that
you will dismiss the Complaint filed in the above-referenced
matter and submit to arbitration all claims set forth therein."
[Docket Item 9-3, Exh. B.] On June 25, 2010, the notice of
dismissal was entered and the case terminated. [Notice of
Dismissal, Civ. No. 10-2573, Docket Item 4.]

On October 15, 2010, Ms. McMahon sent an e-mail to Mr.
Perskie, suggesting that the parties limit the scope of
arbitration. [Docket Item 9-3, Exh. C.] Out of convenience and to
save time and money, the parties agreed to submit only a narrow
question to the arbitrator: whether Kisby owed Pinnacle for the
subcontracted work only upon receipt of payment for that work
from the project owners or the general contractors, or if Kisby
owed Pinnacle regardless of whether Kisby received payment for
Pinnacle's work from the project owners or the general
contractors; in other words, whether the parties had created a
"pay-if-paid" or a "pay-when-paid" contract.[1] [Pinnacle
Insulation (May 24, 2011) (Keefe, Arb.) at 1; Docket Item 9-3,
Exh. B, C.] The parties agreed that, if the contracts required
Kisby to pay Pinnacle, Pinnacle was entitled to damages in the

---

[1] For more discussion of this distinction, see <u>Kisby Lees
Mechanical LLC v. Pinnacle Insulation, Inc.</u>, Civ. No. 11-5093,
2012 WL 3133681 at *3 n.2 (D.N.J. July 31, 2012).

4

amount of $104,027.92. [Aff. of Shana McMahon ¶ 10; Pinnacle
Insulation (May 24, 2011) (Keefe, Arb.) at 1.] On December 3,
2010, Ms. McMahon sent another e-mail to Mr. Perskie, stating in
part: "We also agreed to speak to both of our clients regarding
the binding nature of arbitration to ensure that they fully
understand and are in agreement that the ultimate outcome will be
final." [Docket Item 9-3, Exh. D.]

    The parties conducted a private arbitration with John E.
Keefe, a retired judge. Judge Keefe, in his written arbitration
award, quoted the "engagement email to the arbitrator" drafted by
Ms. McMahon to describe the scope of the inquiry:

> The sole issue remaining is whether there [sic] payment
> provisions of the contract make payment to the
> subcontractor expressly contingent on the receipt of
> payment from the owner (pay-if-paid) or simply create
> at [sic] timing mechanism whereby the contractor may
> withhold payment from the subcontractor for a
> reasonable time while awaiting payment from the owner
> (pay-when-paid).

[Id.]

Judge Keefe further noted that "[i]t is undisputed that Kisby has
not been paid by either of the project owners" for work performed
by Pinnacle. [Id.]

    However, after agreeing to arbitrate, counsel for Pinnacle
learned that Kisby continued to perform work for LF Driscoll Co.
("Driscoll"), the construction manager of the Atlanticare
project, while maintaining that Driscoll had not yet paid Kisby
for Pinnacle's past work. This continued business relationship

raised suspicions in the minds of Pinnacle's counsel that Kisby might not have pursued payment for Pinnacle's work from Driscoll. [Aff. of Shana McMahon ¶ 13.] When Pinnacle asserted in its arbitration memorandum that the payment clause could not be enforced as a pay-if-paid clause if Kisby had not pursued payment, thus violating Kisby's duty of good faith and fair dealing, Kisby responded that the issue was not before the arbitrator, and the arbitrator agreed. [Aff. of Shana McMahon ¶ 14.]

Judge Keefe's conclusion as to the arbitration award, signed May 24, 2011, was succinct: "Award: The contract between the parties contains a valid pay-if-paid clause." [Pinnacle Insulation (May 24, 2011) (Keefe, Arb.) at 3.]

**B. Procedural History**

On August 16, 2011, Kisby filed an action to confirm the arbitration award in New Jersey state court, which Pinnacle later removed to this Court, pursuant to 28 U.S.C. § 1441 et seq., on the basis of diversity jurisdiction. [Docket Item 1.]

Pinnacle filed its Answer and Counterclaim on November 23, 2011. [Docket Item 5.] In its Counterclaim, Pinnacle asserted claims for (1) breach of contract, (2) unjust enrichment, and (3) promissory estoppel.

Kisby filed a motion to dismiss Pinnacle's Counterclaim under Rule 12(b)(6) for failure to state a claim. [Docket Item

9.]  Kisby claimed that (1) res judicata, (2) the entire
controversy doctrine, and (3) the doctrine of arbitration and
award bar Pinnacle's Counterclaim. [Id.] Kisby supported its
motion by attaching the declaration of Mr. Perskie, counsel for
Kisby, which contained information regarding the arbitration
proceedings and pre-arbitration discussions between the parties.
[Id.]  Kisby also submitted a statement from James J. Lees, Jr.,
a Kisby executive, averring, among other things, that "Kisby has
not been paid for Pinnacle's work." [Decl. of James J. Lees, Jr.
¶ 5.] Because Kisby relied on matters outside the pleading in its
Rule 12(b)(6) motion, this Court converted that motion to a Rule
56 motion for summary judgment. Kisby Lees Mechanical LLC v.
Pinnacle Insulation, Inc., Civ. No. 11-5093, 2012 WL 3133681 at
*5 (D.N.J. July 31, 2012).

Pinnacle filed its opposition to the converted motion for
summary judgment on August 28, 2012, and attached two new
affidavits in support of its position: one from Robert J. Miller,
the executive vice president of Driscoll, averring that Kisby had
been paid in full for Pinnacle's work on the Atlanticare project;
and one from Ms. McMahon, counsel for Pinnacle, concerning the
circumstances surrounding the Keefe arbitration. [Docket Item
22.] In its brief, Pinnacle reasserts its opposition to Kisby's
res judicata, entire controversy doctrine and arbitration and
award claims. [Id. at 4] Pinnacle adds that it did not learn that

7

Kisby received payment from the Atlanticare project owner until after the 30-day period for vacating the arbitration award for fraud had passed. [<u>Id.</u> at 6.][2] Pinnacle requests that, if summary judgment is granted, Pinnacle be given leave to file an amended complaint asserting a claim of fraud against Kisby. [<u>Id.</u> at 7.]

On September 11, 2012, Kisby submitted a reply brief in further support of its motion for summary judgment. [Docket Item 23.] Kisby requests summary judgment and, in the alternative, if summary judgment is denied, for the Court to compel Pinnacle to submit any surviving elements of its Counterclaim to binding arbitration. [Pl. R. Br. at 21.]

## III. DISCUSSION

### A. Standard of Review

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of

---

[2] Moreover, in the present case Pinnacle does not seek to vacate the arbitrator's award and it accepts the ruling that the subcontract's payment clause was "if-paid." [Pinnacle Br., Docket Item 22, at 6.] Pinnacle argues that Kisby's denial that it had not been paid for the Atlanticare Regional Medical Center project was false, and that Kisby's false statement that it had not been paid – and therefore that it owed nothing to Pinnacle under the "if-paid" clause – was the false premise upon which counsel for the parties identified the issue for the limited arbitration. [<u>Id.</u> at 7.]

law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).
Summary judgment will not be denied based on mere allegations or
denials in the pleadings; instead, some evidence must be produced
to support a material fact. U.S. v. Premises Known as 717 S.
Woodward St., Allentown, Pa., 2 F.3d 529, 533 (3d Cir. 1993).
However, the Court will view the evidence and draw any reasonable
inferences in the light most favorable to the nonmoving party.
See Hunt v. Cromartie, 526 U.S. 541, 552 (1999). See also Scott
v. Harris, 550 U.S. 372, 378 (2007) (the district court must
"view the facts and draw reasonable inferences in the light most
favorable to the party opposing the summary judgment motion.").

**B.  Res Judicata**

Kisby argues that res judicata, or claim preclusion, bars
Pinnacle's counterclaims because the arbitration award was a
final judgment on the merits, the arbitration and the present
action involve identical parties and the arbitration and the
present action arise out of the same causes of action, namely,
breach of contract, unjust enrichment, and promissory estoppel.
[Pl. Mot. to Dismiss at 11-12.] Kisby concedes in its brief that
the parties "limited the arbitration to a single issue," but
Kisby nonetheless argues that Pinnacle knew of, and could have
arbitrated, additional claims arising from its contracts,
particularly those contained in Pinnacle's initial complaint to
this Court, which was dismissed without prejudice. [Pl. Mot. to

9

Dismiss at 13-14; Pl. R. Br. at 6.] Kisby further argues that the
parties agreed that "the ultimate outcome will be final." [Pl. R.
Br. at 6.] The questions of whether Kisby breached a covenant of
good faith and fair dealing, as well as whether Kisby was paid
for Pinnacle's work, were aspects of Pinnacle's larger claim for
breach of contract, and Kisby's position is that Pinnacle's
decision not to arbitrate those issues should trigger res
judicata and prevent those claims from being litigated in this
Court. [Pl. Mot. to Dismiss at 15-16.]

Pinnacle responds that it did not "waive" any arguments when
its original complaint was dismissed without prejudice, or when
the company later agreed to arbitrate the narrow question of
whether the contract constituted a "pay-if-paid" agreement. [Def.
Opp'n to Mot. to Dismiss at 15-16.] Pinnacle argues that a
voluntary dismissal without prejudice under Rule 41(a) does not
operate as an adjudication on the merits and does not carry
preclusive effect. [Id. at 19.] Pinnacle adds that the question
decided in arbitration was narrow, and all other issues,
including the good faith claim Pinnacle tried, but was not
permitted, to assert in arbitration, were not decided "on the
merits" and thus res judicata does not apply. [Id. at 20.]
Pinnacle disputes that it "agreed" to the finality of the
arbitration aside from the issue of contract interpretation. [Id.
at 12.] Finally, Pinnacle argues that the arbitration and the

Counterclaim are not based on the same "cause of action," and the matter before the Court is not the interpretation of contract language but the enforcement of the contract, now that the condition precedent for payment has been met. [<u>Id.</u> at 21-22.]

Res judicata is applied when three circumstances are present: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." <u>In re Mullarkey</u>, 536 F.3d 215, 225 (3d Cir. 2008); <u>see</u> <u>also</u> <u>Habick v. Liberty Mut. Fire Ins. Co.</u>, 727 A.2d 51, 57 (N.J. Super. Ct. App. Div. 1999) (stating that "[t]he key factor is the opportunity once to be heard fully"). Res judicata "encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes." <u>Brown v. Felsen</u>, 442 U.S. 127, 131 (1979).  Thus, in order to apply res judicata, this Court must find that: (1) the arbitration award was a final judgment on the merits; (2) Pinnacle and Kisby were parties to the arbitration proceedings; and (3) this suit is based on the same cause of action as the arbitration award.

Neither party disputes that Pinnacle and Kisby were parties to both the arbitration and the present suit. The Court will focus on the first and third requirements in determining whether to apply res judicata.

It is well settled that confirmed arbitration awards shall

be given preclusive effect. <u>See</u> N.J.S.A. § 2A:23A-18 ("Upon the granting of an order confirming, modifying or correcting an award, a judgment or decree shall be entered by the court in conformity therewith and be enforced as any other judgment or decree"). However, the arbitration award in this case has not yet been confirmed, so the Court must decide what preclusive effect to give the unconfirmed award.

The preclusive effect given to judgments of other tribunals by federal courts is governed by the Full Faith and Credit Statute, 28 U.S.C. § 1738, which states that:

> The records and judicial proceedings of any court of any . . . State . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken.

However, Section 1738 does not apply to arbitration awards, and the Supreme Court has held that an unreviewed arbitration award need not be given section 1738 preclusive effect. <u>N.L.R.B. v. Yellow Freight Sys., Inc.</u>, 930 F.2d 316, 319 (3d Cir. 1991) (citing <u>McDonald v. City of West Branch</u>, 466 U.S. 284, 287 (1984)).

Because unconfirmed arbitration awards are not entitled to recognition under the Full Faith and Credit Statute, "[a]ny decision to accord preclusive effect thus must be a matter of a judicially fashioned preclusion rule." 18B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure: Jurisdiction §

4475.1 n.6 (2d ed.).

The Third Circuit has not yet clearly defined the parameters of according preclusive effect to an unconfirmed arbitration award. See Sheet Metal Workers Int'l Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc., 673 F. Supp. 2d 313, 320 (D.N.J. 2009) (looking to the Restatement (Second) of Judgments for guidance, absent clear direction from the Third Circuit).

In Gruntal & Co., Inc. v. Steinberg, 854 F. Supp. 324, 337 (D.N.J. 1994), aff'd, 46 F.3d 1116 (3d Cir. 1994), the court stated that "[a]bsent judicial confirmation, an arbitration award will not result in a 'final judgment' and cannot, therefore, have preclusive effect on subsequent litigation." The court declined to give the arbitration award in question preclusive effect because the award was unconfirmed, it could not be determined whether the issue at bar was determined in arbitration, and the plaintiff was not afforded a "full and fair opportunity to litigate" in arbitration. Id. at 338; see also Shtab v. Greate Bay Hotel & Casino, Inc., 173 F. Supp. 2d 255, 261 (D.N.J. 2001) (maintaining that unconfirmed arbitral awards do not have preclusive effect in subsequent litigations).

However, there may be some situations in which an unconfirmed arbitration award will be given preclusive effect. In Sheet Metal Workers, 673 F. Supp. 2d at 320, the court stated that "[j]udicial proceedings ordinarily accord preclusive effect

to arbitrations that have already adjudicated the same claims or defenses, even when the award is unconfirmed." Applying the Restatement (Second) of Judgments §§ 83, 84, the court went on to accord preclusive effect to the arbitration proceeding. Id. Similarly, in In Re Purington, Civ. No. 11-11617, 2012 WL 1945510 at *6 (Bankr. D.N.J. May 30, 2012), the court noted that there may be appropriate circumstances where an unconfirmed award will be given res judicata effect. However, the court went on to find that the unconfirmed arbitration award in that case should not be given preclusive effect because the arbitration process was extremely limited, there was no indication that either party "had their day in court," and a main issue was left unresolved.  Id. at *6-7.

Under the Restatement (Second) of Judgments, §§ 83-84 (1982), the following elements must be satisfied in order for an arbitration award to have preclusive effect: (1) adequate notice to the parties who are to be bound by arbitration, (2) the right to present evident and legal argument, and to rebut evidence and legal argument by the opposing parties, (3) a formulation of issues of law and fact concerning the specified parties and a specific transaction, (4) a rule of finality, specifying a point in the proceeding when presentations are terminated and a final decision is rendered, and (5) other procedures sufficient to determine the matter in question conclusively.

14

Here, there is no genuine dispute that the procedures governing the arbitration were adequate and fair and that the arbitration produced a final award.

However, the Restatement (Second) of Judgments § 84 (1982) further provides that "[i]f the terms of an agreement to arbitrate limit the binding effect of the award in another adjudication or arbitration proceeding, the extent to which the award has conclusive effect is determined in accordance with that limitation." The commentary clarifies:

> The terms of an agreement to arbitrate, or the custom or practice under which the arbitration is conducted, may limit the issue preclusive effect of the determination of issues in arbitration under the agreement. Such a limitation should normally be given effect under principles of contract law, for the parties are under no obligation to submit themselves to arbitration with broader effects than may be agreed upon.

Restatement (Second) of Judgments § 84 cmt. h (1982). See also In re Kaplan, 143 F.3d 807, 816 (3d Cir. 1998) (holding that the scope of arbitration is defined by contract, and an arbitration agreement may limit its preclusive effects).

Construing the evidence in the light most favorable to Pinnacle, a reasonable jury could find that the parties agreed to limit the scope of arbitration to the discrete issue of contract interpretation, to determine if the language created a "paid-if-paid" contract, and that they did not agree that the proceeding would carry preclusive effect as to claims not brought in

15

arbitration. It is plausible to read counsels' ambiguous statements that the arbitration would be binding and final to mean that the arbitration would be binding as to the limited question presented, which, at the time, Pinnacle's counsel believed could be dispositive of its claim. [Docket Item 9-3, Exh. B, C.] Nowhere in the record is there unassailable proof that Pinnacle expressly and knowingly agreed to waive any of its claims or that the limited arbitration award would preclude bringing other claims in court or submitting them to arbitration. If, at the time, Pinnacle chose not to arbitrate claims now disputed, Pinnacle's decision appears to have been based on representations by Kisby that it had not been paid for Pinnacle's work – a fact now in dispute. [Pinnacle Insulation (May 24, 2011) (Keefe, Arb.) at 1.]

Other than contract interpretation, no claims in this case have received a final determination on the merits; indeed, no other claims have received "their day in court" and major issues remain unresolved, namely whether Kisby was paid for Pinnacle's work and withheld payment in violation of its contract. As the Third Circuit stated in In re Kaplan, "generally applicable res judicata rules must sometimes be adapted to fit the arbitration context." 143 F.3d at 815. Following the lead of other courts, which have declined to apply res judicata to bar claims not raised and decided in a limited, unconfirmed arbitration

16

proceeding, see Gruntal & Co., Inc., 854 F. Supp. at 337-38, in this case, the Court holds that res judicata does not bar counterclaims of issues that were voluntarily dismissed without prejudice and were never decided on the merits in a narrowly circumscribed arbitration proceeding, which was never confirmed by a court.

Kisby's reliance on W. Md. Wireless Connection v. Zini, 601 F. Supp. 2d 634 (D. Md. 2009), is not persuasive. There, U.S. Cellular and its authorized agent, Western Maryland Wireless, Inc., entered a binding arbitration to resolve a contract dispute. Id. at 638-39. The arbitration was wide-ranging, adjudicating two claims by U.S. Cellular and eleven counterclaims by Western Maryland, culminating in a three-day arbitration hearing and an award set forth in an eight-page opinion. Id. at 638. When Western Maryland sought to bring "the exact claims denied in binding arbitration" in federal court, the district court held that the claims were barred by res judicata. Id. at 639, 643.

Kisby points to language in the opinion that suggests that, in addition to the claims arbitrated, claims that could have been raised in arbitration, but were not, should be barred by res judicata.[3] [Pl. Mot. to Dismiss at 14-16.] However, the district

---

[3] Kisby also cites In re Mullarkey, 536 F. 3d at 225, for this proposition, but that case is equally unpersuasive on this point because it did not involve arbitration.

17

court did not hold as much, because "the precise claims that Western Maryland raises in its complaint herein were expressly and definitively litigated during the arbitration and actually decided by the arbitrator." W. Md. Wireless Connection, 601 F. Supp. 2d at 642. The present action arises from a materially different set of circumstances. Here, the arbitration was not nearly as comprehensive as that in W. Md. Wireless Connection. Additionally, Pinnacle does not attempt to bring claims in federal court that were "expressly and definitively litigated . . . and actually decided" in arbitration, as did Western Maryland in that case. Therefore, the Court is unpersuaded that the holding in W. Md. Wireless Connection should dictate a similar result in this case.

For the foregoing reasons, Kisby's motion for summary judgment on the basis of res judicata will be denied.

**C. Entire Controversy Doctrine**

The entire controversy doctrine is "New Jersey's specific, and idiosyncratic, application of traditional res judicata principles." Rycoline Prods., Inc. v. C & W Unlimited, 109 F.3d 883, 886 (3d Cir. 1997). Rule 4:30A of the New Jersey Court Rules, which codifies the entire controversy doctrine, provides:

> Non-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine, except as otherwise provided by R. 4:64-5 (foreclosure actions) and R. 4:67-4(a) (leave required for

counterclaims or cross-claims in summary actions).

The New Jersey courts have extended the entire controversy doctrine to related claims, defenses, counterclaims, and cross-claims. <u>Fields v. Thompson Printing Co., Inc.</u>, 363 F.3d 259, 265 (3d Cir. 2004).

Both New Jersey and federal law apply claim preclusion when three circumstances are present: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." <u>In re Mullarkey</u>, 536 F.3d at 225 (quoting <u>Post v. Hartford Ins. Co.</u>, 501 F.3d 154, 169 (3d Cir. 2007)). Unlike claim preclusion, which concerns claims that were, or should have been, brought in a single cause of action, "under the Entire Controversy doctrine, the unit of analysis is a 'controversy': thus, 'a party cannot withhold part of a controversy for later litigation even when the withheld component is a separate and independently cognizable cause of action.'" <u>City Select Auto Sales, Inc. v. David Randall Assocs., Inc.</u>, Civ. No. 11-2658, 2012 WL 426267, at *6 (D.N.J. Feb. 7, 2012) (quoting <u>In re Mullarkey</u>, 536 F.3d at 229).

In order to determine whether successive claims constitute one "controversy," courts much determine whether the claims arise from "related facts or the same transaction or series of transactions." <u>Fields</u>, 363 F.3d at 265 (quoting <u>DiTrolio v.</u>

19

Antiles, 662 A.2d 494, 502 (N.J. 1995)).  The Supreme Court of

New Jersey explained the test for whether claims constitute one

"controversy" as follows:

> if parties or persons will, after final judgment is
> entered, be likely to have to engage in additional
> litigation to conclusively dispose of their respective
> bundles of rights and liabilities that derive from a
> single transaction or related series of transactions,
> the omitted components of the dispute or controversy
> must be regarded as constituting an element of one
> mandatory unit of litigation.

DiTrolio, 662 A.2d at 502 (quoting O'Shea v. Amoco Oil Co., 886

F.2d 584, 590-91 (3d Cir. 1989)); see also Mystic Isle Dev. Corp.

v. Perskie & Nehmad, 662 A.2d 523, 529 (N.J. 1995) (stating that

"[i]n essence, it is the factual circumstances giving rise to the

controversy itself, rather than a commonality of claims, issues

or parties, that triggers the requirement of joinder to create a

cohesive and complete litigation").

The entire controversy doctrine extends to arbitration

proceedings, at least in some circumstances.  Shoremount v. APS

Corp., 845 A.2d 729, 731 (N.J. Super. Ct. App. Div. 2004).  The

entire controversy doctrine precludes plaintiffs from litigating

issues "of which they were aware at the time of the prior dispute

settlement proceeding and arbitration" and which were "ripe and

amenable to resolution" through the alternative dispute

resolution process.  Spolitback v. Cyr Corp., 684 A.2d 1021, 1023

(N.J. Super. Ct. App. Div. 1996) (deciding that the plaintiffs

were barred from litigating both claims submitted to arbitration and those that were not submitted to arbitration but were known at the time).

However, the Superior Court of New Jersey Appellate Division has noted that the entire controversy doctrine is "not imported wholesale into arbitration proceedings." Shoremount, 845 A.2d at 732.  More specifically, the entire controversy doctrine must be applied cautiously to litigation involving limited-issue arbitration and "only where necessary to achieve the purposes and policy of the doctrine." Id. (internal quotation marks and citation omitted).

According to the Third Circuit and the Supreme Court of New Jersey, the entire controversy doctrine has three purposes: to encourage complete and final dispositions without piecemeal decisions, to facilitate fairness to parties and others with a material interest in an action, and to encourage efficiency and avoidance of waste and delay. In re Mullarkey, 536 F.3d at 229; see also Gelber v. Zito P'ship, 688 A.2d 1044, 1046 (N.J. 1997) (maintaining that "[t]he twin pillars of the Entire Controversy Doctrine are fairness to the parties and fairness to the system of judicial administration"). Moreover, the entire controversy doctrine is an equitable doctrine, and therefore its application is "flexible, with a case-by-case appreciation for fairness to the parties." In re Mullarkey, 536 F.3d at 229; see also Mystic

21

<u>Isle Dev. Corp.</u>, 662 A.2d at 529-30 (asserting that, as an equitable principle, the doctrine's applicability is left to judicial discretion based on the circumstances).  The entire controversy doctrine was never intended to be a "trap for the unwary," but is instead a "remedy of last resort." <u>Fornarotto v. Am. Waterworks Co., Inc.</u>, 144 F.3d 276, 284 (3d Cir. 1998) (internal citations marks and quotation omitted).

As previously discussed, viewing the evidence and drawing any reasonable inference in light most favorable to the nonmoving party, a reasonable jury could find that the parties agreed that the arbitration was limited in scope to the narrow question of contract interpretation. Given the cautiousness with which courts apply the entire controversy doctrine following limited arbitrations, and given the equitable case-by-case approach endorsed by Third Circuit and New Jersey courts, the Court will apply the doctrine only if doing so would advance its motivating purposes.

Here, although permitting Pinnacle's counterclaims to survive would require another proceeding to decide the case, resulting in piecemeal adjudication of the controversy, Kisby and Pinnacle originally limited the scope of arbitration in the name of efficiency and fairness and to avoid unnecessary delay and expense for both sides, according to the facts known and disputed at the time. [Docket Item 9-3, Exh. C.] To hold that the entire

controversy doctrine now bars claims not raised in arbitration
and not abandoned or dismissed with prejudice is to encourage
future litigants to conduct more comprehensive, time-consuming
and costly arbitration proceedings, even when seemingly
unnecessary to decide the issues in dispute, to ensure that all
claims receive due and fair consideration. This result runs
counter to the purposes of the entire controversy doctrine and
would deter parties from pursuing the normally beneficial course
of limited binding arbitration of the key issue or claim in
dispute. Furthermore, the claims that Pinnacle now seeks to
litigate are not unfairly repetitious of the issue decided in
arbitration, nor is there evidence that Pinnacle withheld the
claims from arbitration in bad faith. The Court thus denies
Kisby's motion for summary judgment on the grounds of the entire
controversy doctrine.

### D. Arbitration and Award

Kisby urges the Court to grant summary judgment on the
grounds of "arbitration and award," an affirmative defense
enumerated in Fed. R. Civ. P. 8(c). Kisby argues that the
doctrine applies because the arbitration resulted in a final
award, and, as argued previously, Pinnacle waived all claims not
brought to arbitration. [Pl. Mot. to Dismiss at 20-24.] As
evidence of the comprehensive nature of the arbitration, Kisby
points to the engagement e-mail (quoted in relevant part above,

<u>see</u> Part II.A) [Pl. Mot. to Dismiss, Ex. E], and a letter written by Mr. Perskie, counsel for Kisby, dated June 18, 2010, to "confirm our agreement that you will dismiss the Complaint filed . . . and submit to arbitration all claims set forth therein." [Docket Item 9-3, Exh. B.]

Pinnacle responds simply that the counterclaims were not the subject of arbitration and did not result in a decision or award, and thus cannot be barred. [Def. Opp'n to Mot. to Dismiss at 23.] Further, Pinnacle notes that the June 18, 2010, letter was not written by Pinnacle or Pinnacle's counsel, and pre-dated the later agreement to narrow the scope of the arbitration. [<u>Id.</u> at 5-6.]

The parties agree that <u>Gen. Drivers, Warehousemen and Helpers, Local 89 v. Riss & Co.</u>, 372 U.S. 517, 519 (1963), stands for the proposition that the arbitration-and-award defense "requires dismissal of claims that were the subject of arbitration that resulted in a decision or award." [Pl. Mot. to Dismiss at 20; Def. Opp'n to Mot. to Dismiss at 23.]

As explained above in response to Kisby's other arguments, a reasonable jury could find, based on the arbitration engagement e-mail and correspondence between the parties via counsel, that Pinnacle did not waive its claims that were voluntarily dismissed without prejudice and that Pinnacle's counterclaims were not the subject of arbitration that resulted in a decision or award.

24

Thus, summary judgment on the grounds of arbitration and award must be denied.

### E. Referral of Claims to Arbitration

Having denied summary judgment on all of Kisby's theories, the Court will consider Kisby's alternative argument, that Pinnacle's Counterclaims must be pursued in arbitration, rather than in this Court. [Pl. Mot. to Dismiss at 24-26.]

Kisby argues that the Federal Arbitration Act, 9 U.S.C. §§ 1-14 ("FAA"), embodies a federal policy favoring arbitration and governs the contract between these diverse parties, because the contract concerns a transaction involving interstate commerce that requires controversies to be resolved by arbitration. [Pl. Mot. to Dismiss at 24-25.] Kisby asserts that the contracts between the parties require arbitration of any surviving breach of contract claim that Pinnacle may raise. [Pl. Mot. to Dismiss at 25-26.]

Pinnacle denies that the contracts compel arbitration. [Def. Opp'n to Mot. to Dismiss at 24-27.] In all of Pinnacle's contracts with Kisby, Pinnacle was a subcontractor, and Kisby was either a higher-tier subcontractor or the general contractor. [Docket Item 9-4, Exh. A, B.] The three contracts attached as exhibits here all require that claims arising under the contracts will be decided in the same manner and using the same procedures as directed under the "Principal Contract[s]" between the project

owners and the general contractors. [Docket Item 9-4, Exh. A at ¶
5; Docket Item 904, Exh. B at ¶ 18.1.] The contracts between
Kisby and Pinnacle include back-up procedures in case the
principal contracts are silent on dispute resolution. [Docket
Item 9-4, Exh. A at ¶ 5; Docket Item 904, Exh. B at ¶ 18.1.]

Unfortunately, as Pinnacle points out, none of the principal
contracts have been attached as exhibits.[4] [Def. Opp'n to Mot. to
Dismiss at 26-27.] Although Pinnacle originally withdrew its
complaint in favor of arbitration, ostensibly because the

---

[4] The subcontract agreement between "Contractor" Kisby, and
"Subcontractor" Pinnacle, on the ACMC City High Rise project in
Atlantic City, dated June 16, 2006, reads in relevant part that
"[a]ll other disputes, claims or questions arising shall be
decided by means in the same manner and under the same procedure
as provided in the principal contract between the Owner and
General Contractor / Owner's Representative." [Docket Item 9-4,
Exh. A at ¶ 5.] The owner in this case was ACMC. The contract
between ACMC and Kisby has not been attached to Kisby's motion to
dismiss the counterclaim.
    The contract between "Contractor: Shore-Plummer, c/o Kisby
Shore Corp" and "Subcontractor" Pinnacle, for the Atlanticare
city campus project, dated October 23, 2007, uses identical
language, and, likewise, the contract between the Owner,
Atlanticare Regional Medical Center, and the Contractor is not
attached to the motion to dismiss. [Docket Item 9-4, Exh. A]
    The contract between the "Construction Manager," LF Driscoll
Co., and "Subcontractor" Kisby, on the Atlanticare project, dated
February 24, 2006, sets forth the same agreement: "Any claims or
disputes arising hereunder shall, at the Construction Manager's
sole option, be resolved in accordance with the dispute
resolution procedures set forth in the Principal Contract . . .
." [Docket Item 9-4, Exh. B. at ¶ 18.1.] The Principal Contract
is defined as the contract between the Construction Manager,
Driscoll, and the Owner, Atlanticare Regional Medical Center.
[Id. at ¶ 2.3.] That contract as not been attached.

contracts required it,[5] there is insufficient evidence before the Court to determine whether the contracts compel arbitration of Pinnacle's surviving claims. The Court will deny Kisby's request without prejudice. If desired, Kisby may file a motion to compel arbitration and attach all contracts necessary to determine the matter. If, indeed, the principal contracts referred to in the parties' subcontracts contain arbitration clauses embracing the counterclaims made herein, Pinnacle shall not unreasonably withhold its consent to pursue arbitration.

## IV.  CONCLUSION

For the reasons stated above, the Court will deny Plaintiff's motion for summary judgment. The Court will deny Plaintiff's request to refer surviving claims to arbitration without prejudice.  The accompanying Order will be entered.


**September 24, 2012**                    **s/ Jerome B. Simandle**
Date                                       JEROME B. SIMANDLE
                                           Chief U.S. District Judge

---

[5] In Ms. McMahon's affidavit, she states that after Pinnacle filed its original complaint in this Court, she was contacted by Mr. Perskie "who advised that Kisby Shore's subcontract contained arbitration provisions and request[ed] that Pinnacle dismiss the Action. As a result of that conversation, Pinnacle voluntarily dismissed the action without prejudice." [Aff. of Shana McMahon at ¶¶ 3-4.]